IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GEORGE T. BOBBITT,

    Plaintiff,

    v.                          Civil Action No. DKC-24-2054

RONALD SHANE WEBER, *et al*.,

    Defendants.

**MEMORANDUM OPINION**

Pending before the court are motions to dismiss or for summary judgment filed on behalf of Defendants Ronald Shane Weber, Sharon Baucom, and Bradley Butler ("Correctional Defendants") (ECF No. 26) and on behalf of Defendants Sandra Boettinger, Solaide Akintade, and Mandip Bartels,[1] ("Medical Defendants"). ECF No. 30. Plaintiff George T. Bobbitt opposes the motions and requests discovery. ECF Nos. 35, 36. Medical and Correctional Defendants filed replies. (ECF Nos. 38, 43, respectively). No hearing is deemed necessary as the issues have been fully briefed. *See* Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the Correctional Defendants' motion is granted and the Medical Defendants' motion is denied without prejudice.

I.    Complaint Allegations

Plaintiff George Bobbitt is an inmate confined at Western Correctional Institution ("WCI") (ECF No. 1). Mr. Bobbitt filed a Complaint on July 15, 2024 (*id.*) and a court-directed Supplement to the Complaint on August 26, 2024. ECF No. 7. He alleges that he has been denied

---

[1]    The Clerk shall amend the docket to reflect that Mandip Bartels is named as Defendant YesCare Utilization Management Medical Director ("UMMD").

constitutionally adequate medical care due to the denial of a left foot bunionectomy.  ECF Nos. 1 and 7.  He named as Defendants Ronald Shane Weber, Warden of WCI; Sharon Baucom, Chief Medical Officer, Department of Public Safety and Correctional Services ("DPSCS"); Dr. Solaide Akintade; and Sandra Boettinger, RN.  *Id.*  On October 15, 2024, Mr. Bobbitt filed an Amended Complaint, incorporating his initial and supplemental Complaints and adding Defendants Bradley Butler, Assistant Warden; YesCare Scheduler; YesCare John/Jane Does; and YesCare Utilization Management Medical Director as additional Defendants.  ECF No. 18.  The court previously dismissed YesCare John/Jane Doe as a Defendant.  ECF No. 22.

Mr. Bobbitt alleges that Corizon Health Inc./YesCare Inc. approved him to have surgery on both feet and on January 22, 2020, he underwent a bunionectomy to his right foot.  ECF No. 7 at 5; ECF No. 18 at 3.

On November 30, 2023, Dr. Berger submitted a consultation request for a bunionectomy on Mr. Bobbitt's left foot to relieve pain caused by the bunion deformity.  ECF No. 7 at 6; ECF No. 18 at 3.  On December 19, 2023, Sandra Boettinger and Dr. Akintade denied the consultation request, finding "ATP, medical necessity not met for referral."  ECF No. 7 at 6; ECF No. 18 at 3.

On May 5, 2024, Dr. Berger determined that Mr. Bobbitt still required surgery on his left foot, but the request for surgery again was denied on June 18, 2024.  ECF No. 7 at 5; ECF No. 18 at 4.  Mr. Bobbitt explains that without the surgery he continues to suffer excruciating foot and lower back pain which interferes with his daily activities and limits his ability to perform his job.  *Id.*

Mr. Bobbitt explains that he has been seen by multiple podiatrists and other medical providers who repeatedly recommended a bilateral bunionectomy on both feet to relieve pain.  ECF No. 7 at 6; ECF No. 18 at 3.  He has received treatment consisting of wide shoes, bunion custom

mold fittings, and Neurontin which have "not worked." *Id*. Mr. Bobbitt asserts that his pain is not being treated and he continues to suffer. *Id*. at 4.

In regard to the named Defendants, Mr. Bobbitt asserts that Warden Ronald Weber failed to intervene on his behalf or sufficiently monitor or follow up with Dr. Berger, YesCare staff, and Sharon Baucom to have the surgery approved. ECF No. 7 at 5. Mr. Bobbitt explains that he requested Warden Weber's intervention in his Administrative Remedy Procedure (ARP) after Assistant Warden Bradley Butler admonished medical staff in his response to the ARP. *Id.* Warden Weber failed to take any action based on his knowledge of Mr. Bobbitt's deficient medical care. *Id*.

Mr. Bobbitt claims that Assistant Warden Butler is in charge of the day-to-day operation of the WCI medical department and authorizes the recommendations and findings regarding the dispositions of ARPs. ECF No. 18 at 1. On March 19, 2024, Assistant Warden Butler found Mr. Bobbitt's ARP meritorious in part. *Id*.

Mr. Bobbitt asserts that Sharon Baucom and Warden Weber breached their duty of care by failing to follow up with their independent contractors after Mr. Bobbitt wrote to them and requested their intervention in the denial/delay of the left foot bunionectomy. ECF No. 7 at 5. As Chief Medical Officer, Mr. Bobbitt claims that Dr. Baucom had direct authority over medical contractors regarding the performance of their duties. *Id*.

Mr. Bobbitt asserts that Sandra Boettinger was responsible for determining the appropriateness of care and, on December 29, 2023, and June 18, 2024, denied Dr. Berger's consultation requests for surgery, which resulted in his experiencing substantial and unnecessary pain. ECF No. 7 at 5; ECF No. 18 at 4.

Mr. Bobbitt claims that Dr. Akintade is responsible for recommending the appropriateness of care and, on December 19, 2023, denied Dr. Berger's consultation request for surgery resulting in substantial and unnecessary pain to Mr. Bobbitt.  ECF No. 7 at 5.

The unidentified YesCare Scheduler is tasked with scheduling medical appointments approved by utilization management.  ECF No. 18 at 2.  YesCare Utilization Management Medical Director, later identified as Mandip Bartels, is responsible for recommending the appropriateness of care and makes recommendations and decisions to approve or deny medical consultation requests and other specialty care.  *Id*. at 3.

II.     Defendants' Motions

The Correctional Defendants move for summary judgment or dismissal, arguing that:  (1) Mr. Bobbitt signed a release in another lawsuit ("*Bobbitt I*") which requires the entry of summary judgment in this case; (2) Correctional Defendants are immune from suit in their official capacities; (3) Mr. Bobbitt failed to allege supervisory liability or otherwise state a claim against Correctional Defendants; (4) Mr. Bobbitt failed to exhaust his administrative remedies; (5) Correctional Defendants are entitled to qualified immunity; (6) Mr. Bobbitt is not entitled to injunctive relief; and (7) the state law claims are subject to dismissal.  ECF No. 26-1.

The Medical Defendants move for summary judgment or dismissal arguing that:  (1) the release signed in *Bobbitt I* bars his claims; (2) Mr. Bobbitt has failed to state a claim against the named Medical Defendants; and (3) Medical Defendants were not deliberately indifferent to Mr. Bobbitt's serious medical needs.  ECF No. 30-1.

4

III. Analysis

    A. Release

On March 9, 2020, Mr. Bobbitt filed suit against DPSCS, Captain Gordon, CO II Robey, and Assistant Warden Bradley Butler complaining that correctional staff confiscated his CAM boot that had been prescribed to him to aid his recovery from right foot bunionectomy surgery. *See Bobbitt v. DPSCS, et al*., Civil Action No. JRR-20-648 (*Bobbitt I*).  The parties entered into a settlement agreement on May 6, 2024 (ECF No. 26-3), wherein Mr. Bobbitt agreed to release Defendants and any other party that he could have sued during the pendency of the lawsuit from any and all claims he could have raised in the lawsuit.  *Id*.  Mr. Bobbitt agreed not to sue any person for any claims known or unknown existing or arising in the future that arose out of or related in any way to the matter alleged or that could have been alleged in the lawsuit.  *Id*. at 4. The settlement's release clause was effective when Mr. Bobbitt received the payment, *e.g*. on September 9, 2024.  *Id*. at 2.  A stipulation of dismissal with prejudice was docketed on September 12, 2024, and the case was dismissed on September 15, 2024.  *Bobbitt I* at ECF Nos. 73 and 74. Paragraph K of the settlement agreement provides:

> Plaintiff hereby covenants and agrees not to sue any person, firm, corporation, association or government entity for any claims, demands, damages, actions, causes of action or suit at law or in equity, of whatever kind or nature, whether known or unknown, suspected or unsuspected, existing now or to arise in the future, arising out of or relating, in any way, to the matters that were alleged, or that could have been alleged, in the Lawsuit, or that relate to the incident or incidents giving rise to the Lawsuit.

ECF No. 26-3 at 4.

The Correctional Defendants assert that during the pendency of *Bobbitt I,* and prior to the effective date of the release, Mr. Bobbitt was aware that, on December 19, 2023, and June 18, 2024, the request for left foot bunionectomy was denied.  ECF No. 1 at 1, 2; ECF No. 7 at 5; ECF

No. 18 at 4.    Additionally, the Correctional Defendants point to both Mr. Bobbitt's ARPs complaining of the denial of the left foot bunionectomy and his medical records as evidence of his awareness of this claim prior to executing the release.    *See e.g.* ECF No. 27-1 at 3-11.    The Medical Defendants adopt this argument.    ECF No. 30-1.

Mr. Bobbitt maintains that he could not have brought his claims against Correctional Defendants regarding the denial of his left foot bunionectomy in *Bobbitt I* because he had not exhausted his administrative remedies during the pendency of that case.    ECF No. 36-1 at 2.    He also argues that the settlement was only to the Defendants named in the agreement, and the agreement specifies that no other party or entity would be deemed a third party beneficiary.    *Id*. Lastly, he argues that the settlement agreement only concerned the interference with prescribed medical treatment regarding his right foot.    *Id*. at 3.

The court disagrees that the release executed in *Bobbitt I* is a bar to the claims asserted in this case.

Defendants rely on *Jacobs v. Venali, Inc.*, 596 F. Supp. 2d 906 (D. Md. 2009), to support their argument that the general release executed in *Bobbitt I* precludes Mr. Bobbitt's instant case. As in *Jacobs*, the release in this case states that it is governed by Maryland law.    *See* ECF No. 26-3 at 4, ¶ O.

Under the doctrine of *res judicata,* a lawsuit settled with prejudice bars subsequent claims between the parties or their proxies as to the subject of the litigation.    *See Walls v. Bank of Glen Burnie,* 762 A.2d 151 (2000).    "[W]here the parties stipulate to having a case dismissed, a somewhat modified *res judicata* applies to the written settlement agreement upon which such dismissal is predicated, if one exists."    *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1291 (11th Cir. 2004).    Where, as here, a civil action has been dismissed under a settlement

agreement, the preclusive effect of a dismissal judgment "can be no greater than the preclusive effect of the agreement itself." *See U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 913 (4th Cir. 2013).

Whether a suit is precluded by a settlement agreement is determined by the intent of the parties. *Norfolk S. Corp.*, 371 F.3d at 1291. Courts use contract interpretation principles to determine the parties' intent. *Keith v. Aldridge*, 900 F.2d 736, 741 (4th Cir. 1990). "To discern the intent of the parties, the interpretation 'focuses on the writing, and its terms may supercede [sic] other manifestations of intention.'" *E. Coast Repair & Fabrication, LLC v. United States through Dep't of the Navy*, 492 F. Supp. 3d 625, 634 (E.D. Va. 2020), *aff'd sub nom. E. Coast Repair & Fabrication, LLC v. United States through Dep't of Navy*, 16 F.4th 87 (4th Cir. 2021) (quoting Restatement (Second) of Contracts ch. 9, introductory note (1981)).

Under Maryland law, a general release—a release aimed at "all mankind"—bars all future claims against all other entities associated with the events that gave rise to a particular lawsuit. *Peters v. Butler*, 251 A.2d 600, 602 (1969) (citing *Pemrock, Inc. v. Essco Co.*, 249 A.2d 711 (1969)); *see Burns v. Gen. Motors Corp.*, 950 F. Supp. 137, 139 (D. Md. 1996) (applying this principle). General releases are distinguishable from limited or special releases, which only release certain parties and/or certain claims from future litigation. *See Fed. Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 134 (4th Cir. 1987); *Virginia Impression Prods. Co. v. SCM Corp.*, 448 F.2d 262, 265 (4th Cir. 1971). Moreover, a general release extends only to those claims within the parties' contemplation upon the release's execution. *Auslander v. Helfand*, 988 F. Supp. 576, 580 (D. Md. 1997) (citing *Vincent v. Palmer*, 19 A.2d 183 (1941)).

Under Maryland law, "[r]eleases are interpreted according to established principles of contract interpretation." *Auslander*, 988 F. Supp. at 580 (citing *Bernstein v. Kapneck*, 290 Md.

452, 459, 430 A.2d 602 (1981)).  The court must "construe the release to effectuate the parties' intentions." *Id.* (citing *Panamerican Consulting Co. v. Broun*, 209 A.2d 575 (1965)).  If the release's language is clear and unambiguous, the court will afford the words their plain and ordinary meaning and will not consider parol or extrinsic evidence. *Id.* (citing *Bernstein*, 430 A.2d 602).  The construction of an unambiguous contract is for the court to determine.  *Wells v. Chevy Chase Bank, F.S.B.*, 768 A.2d 620, 630 (Md. 2001).  Thus, if the court determines that a contract is unambiguous on a dispositive issue, "it may then properly interpret the contract as a matter of law." *Cochran v. Norkunas*, 919 A.2d 700, 709 n.8 (Md. 2007) (quoting *Washington Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007)).

A written contract is not ambiguous "simply because, in litigation, the parties offer different meanings to the language." *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 929 A.2d 932, 952 (Md. 2007).  "[A] written contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999) (citing *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 578 A.2d 1202, 1208 (Md. 1990)).  When determining whether a contract is ambiguous, the court will consider "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Id.* (quoting *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985).

Here, the release explicitly extends to the named parties in *Bobbitt I* and their "successors assigns, and designees."  ECF No. 26-3 at  2, ¶ B.  The release explicitly states that it does not confer benefits to any third party beneficiary.  *Id.* at ¶  A.  The Defendants in *Bobbitt I* were solely correctional defendants, and as such, the Medical Defendants in this action are not successors in

interest to the Defendants named in *Bobbitt I*, as their release was not contemplated by the settlement agreement.

Further, the subject matter of Mr. Bobbitt's present claim was not related to the claims asserted in *Bobbitt I*, which concerned the confiscation of a prescribed medical device.  As noted, in *Bobbitt I*, Mr. Bobbitt claimed that correctional staff improperly confiscated his prescribed medical device after his 2020 right foot bunionectomy.  While Mr. Bobbitt was aware at the time he executed the release in *Bobbitt I* that the referral for left foot bunionectomy had been denied, that claim is not related to the claims asserted in *Bobbitt I*.  The key to this portion of the release is that the release specifically referenced the Lawsuit filed in *Bobbitt I* and referenced that the agreement concerned claims "arising out of or relating, in any way, to the matters that were alleged, or that could have been alleged, in the Lawsuit, or that relate to the incident or incidents giving rise to the Lawsuit." ECF No. 26-3 at 4, ¶ K.  The Lawsuit referred to is *Bobbitt I*, wherein Mr. Bobbitt alleged that specifically identified correctional staff improperly interfered with his prescribed medical treatment by confiscating his CAM boot which was provided to him to assist his recovery for a 2020 right foot bunionectomy.  Mr. Bobbitt stipulated to the dismissal of all claims related to that issue.

The Defendants' contention that Mr. Bobbitt stipulated to the dismissal of any claim he could have asserted against any Defendant prior to his signing the release is unfounded and the court disagrees with Defendants' contention that Mr. Bobbitt could have amended his complaint in *Bobbitt I* to include the claims regarding the denial of left foot bunionectomy.

Pursuant to Fed. R. Civ. P. 15(a), "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under

Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Mr. Bobbitt had already filed an Amended Complaint in *Bobbitt I* (*Bobbitt I*, ECF No. 4) well before the denial of surgery for the left foot bunionectomy. The denial was well after a responsive pleading had been filed, and therefore Mr. Bobbitt could not have filed an amended complaint as a matter of course.

"In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts should freely give leave to amend when justice so requires. *Id.* Leave to amend should be denied only if "prejudice, bad faith, or futility is present." *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509–10 (4th Cir. 1986). The decision to grant leave to amend rests in the discretion of the court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Prejudice is "often determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). An amendment causes undue prejudice where, as here, it would "raise[] a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party [and]…the amendment is offered shortly before or during trial." *Johnson*, 785 F.2d at 510 (citations omitted). On the other hand, an amendment carries little prejudice where "it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427.

Because the claims asserted in this case regarding the denial of left foot bunionectomy occurred years after the claim asserted in *Bobbitt I* regarding confiscation of a medical device prescribed after Mr. Bobbitt's 2020 right foot bunionectomy, and the claims here concern the delay and denial of medical care for a different body part, and were asserted against different defendants, the court finds that it would have been beyond the scope of Fed. R. Civ. P. 15(a)(2) for Mr. Bobbitt to amend his complaint in *Bobbitt I* to include the present claims. The court also finds that the claims asserted in this case were not contemplated by the settlement agreement reached in

*Bobbitt I.*  As such, the court declines to dismiss the complaint against Defendants on the basis that the settlement agreement reached in *Bobbitt I* precludes resolution of the claims asserted in this case.

B. Exhaustion of Administrative Remedies-Correctional Defendants

The Correctional Defendants raise the affirmative defense that Mr. Bobbitt failed to exhaust his administrative remedies regarding a left foot bunionectomy.  If Mr. Bobbitt's claims were not properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.  The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd,* 98 F. App'x 253 (4th Cir. 2004).

Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, the plaintiff must nonetheless exhaust before this court will hear the claim.  *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).  The exhaustion requirement "allow[s] a prison to address complaints about the program it administers

11

before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530.

Because the court may not consider an unexhausted claim, *see Jones*, 549 U.S. at 220, in this very real sense, exhaustion prior to federal suit is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Importantly however, the court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross*, 578 U.S. at 637. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F. 3d at 1225); *Kaba*, 458 F.3d at 684.

Inmates housed at an institution operated by the Maryland Department of Public Safety and Correctional Services may avail themselves of the administrative grievance process which is designed for "inmate complaint resolution." *See generally* Md. Code (2008 Repl. Vol.),

12

Correctional Services Article ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs ("COMAR" 12.07.01.01B(1) (defining ARP).

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies the appeal, the prisoner may file a grievance with the IGO, also within 30 days. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.06B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a

precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." This court has consistently recognized this principle. *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 624–25 (D. Md. 2015), *aff'd,* 644 F. App'x 243 (4th Cir. 2016); *Wilson v. MCTC Administration*, PWG-21-3094, 2022 WL 14849012 at *6 (D. Md. October 26, 2022); *Leupolu v. Okoluku*, SAG-21-1854, 2022 WL 4017308 at *4 (D. Md. September 1, 2022); *Hand v. Allen*, JKB-20-3119, 2022 WL 137978 at *4 (D. Md. January 14, 2022); *Wooten v. Hogan, et al.*, CCB-20-1218, 2021 WL 416947 at *3 (D. Md. September 14, 2021); *Ervin v. Corizon Health, et al.*, ELH-19-1666, 2020 WL 2490042 at *28 (D. Md. May 13, 2020); *Conway v. Carr*, RDB-19-809, 2019 WL 4806141 at *5 (D. Md. October 1, 2019); *Shiheed v. Webb, et al.*, GLR-16-3166, 2019 WL 3220122 at *5 (D. Md. July 16, 2019); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547 at *3-4 (D. Md. November 11, 2015).

Mr. Bobbitt filed an ARP (WCI-0511024) regarding the December 19, 2023, denial of his left foot bunionectomy. ECF No. 26-5 at 6-10. He timely filed an appeal of the institutional dismissal of the ARP to the Commissioner of Correction, which affirmed the institution's decision on July 23, 2024. *Id*. at 3-5. Mr. Bobbitt's Complaint was received for filing in this case on July 15, 2024. ECF No. 1. He appealed the denial of his ARP to the Inmate Grievance Office which ruled on the grievance on August 5, 2024. ECF No. 26-5 at 11-12.

Mr. Bobbitt filed another ARP on September 24, 2024, regarding his medical care, complaining about chronic care and medications, primarily for his back. ECF No. 26-5 at 13-15. The ARP did not concern the June 18, 2024, denial of his left foot bunionectomy. *Id*.

Here, Mr. Bobbitt did not exhaust his administrative remedies before filing this case. While he filed ARP WCI-0511024 in March of 2024 regarding the December 18, 2023, denial of a left

foot bunionectomy, critically he did not complete the grievance process before filing this case, with the complaint received by the court on July 15, 2024. The appeal was not processed until July 23, 2024, and the IGO grievance was not finalized until August 5, 2024. As to the June 18, 2024, denial of left foot bunionectomy, Mr. Bobbitt did not even initiate the ARP process. ECF No. 26-5. Mr. Bobbitt cannot exhaust the ARP process after filing his federal lawsuit. As such, the Correctional Defendants have shown as a matter of law that Mr. Bobbitt failed to exhaust his available administrative remedies as to the claims asserted against them. Their Motion is granted on this basis.

C. Medical Defendants

1. Defendants' Motion Papers

In her declaration accompanying the motion to dismiss or for summary judgment, Dr. Solaide Akintade explains that she was employed formerly by Corizon Health and YesCare Corp. as the Statewide Utilization Management Medical Director for Maryland from August 6, 2021, to December 15, 2023, after which she became the Statewide Medical Director. ECF No. 30-2 at ¶ 2 (Akintade Decl.). On August 1, 2024, Centurion became the contracted health care provider for DPSCS and Dr. Akintade is currently Acting Statewide Medical Director for Centurion. *Id.*

Dr. Akintade explains that both Corizon and Yescare had a Utilization Management ("UM") process for reviewing consultation requests for certain diagnostic testing, specialist visits, and surgery. ECF No. 30-2 at ¶ 5. After an onsite provider submits a consultation request, the UM Department and a physician on the UM team, referred to as Utilization Management Medical Director ("UMMD") review the request, along with any medical records submitted by the provider, to determine whether medical necessity has been demonstrated for the requested procedure or visit. *Id.* The UMMD can approve the request, ask for additional information, or return an ATP

suggesting a different treatment. *Id*. The decision of the UMMD is returned to the site where the requesting provider can either accept or appeal it. *Id*. Any appeal that is filed is forwarded to the Statewide UMMD who discusses the matter with the Regional Medical Director and the requesting provider. *Id*. A decision is then made by the Statewide UMMD either to uphold or overturn the decision. *Id*.

Dr. Akintade was not involved in the December 18, 2023, decision to submit an ATP in response to the request for left foot bunionectomy. ECF No. 30-2 at ¶ 6. Dr. Akintade avers that the UMMD used their medical judgment to determine there was no medical necessity for the bunionectomy. *Id*.

Sandra Boettinger, RN, in her declaration accompanying the motion to dismiss or for summary judgment, explains that she was employed previously by Corizon and YesCare as a Utilization Management ("UM") Nurse. ECF No. 30-16 at ¶ 2 (Boettinger Decl.). She is currently employed by Centurion as a UM Nurse. *Id*.

She explains that she does not make recommendations regarding the appropriateness of care or evaluate treatment plans because that is outside her scope of practice as a registered nurse. ECF No. 30-16 at ¶ 4; *see also* ECF No. 30-2 at ¶ 6. She is not a medical provider and has not provided any medical or nursing care to Mr. Bobbitt. ECF No. 30-16 at ¶ 4. As a UM Nurse, she is involved in coordinating the review of consultation requests from the site, gathering information including notes, radiology reports, and lab work and submitting the request and documents to the UMMD for consideration. *Id*. at ¶ 5. If the UMMD requests additional information to make a decision, Nurse Boettinger would gather the requested information and return it to the UMMD. *Id*. Nurse Boettinger explains that her scope of practice does not include submitting an ATP in response to any request: only a UMMD can do so. *Id*. Her role is limited to documenting the

ATP or other decision reached by the UMMD.  *Id*.  However, some requests, such as post-op follow up, do not require any medical decision making and are within her scope to approve.  *Id*. She did not deny any consultation requests for Mr. Bobbitt to undergo surgery.  *Id*. at ¶ 6.

Dr. Mandip Bartels, in her declaration accompanying the motion to dismiss or for summary judgment, explains that she was employed by YesCare as a UMMD.  ECF No. 30-17 at ¶ 2.  As UMMD, Dr. Bartels is responsible for reviewing consultation requests submitted by providers requesting outpatient diagnostic, specialty referrals, and procedures.  *Id*. at ¶5.  She reviews a request, along with any medical documentation submitted by the provider, to determine the medical necessity of the requested procedure or visit.  *Id*.  The UMMD does not have access to a patient's full medical record and relies on the information provided by the requesting provider in the CARES platform which usually includes the consultation request and documentation for recent visits.  *Id*.  The UMMD makes recommendations based on the patient's ability to complete activities of daily living, any other medical conditions that would influence the procedure and outcome, and whether conservative medical therapy has been exhausted based on accepted guidelines and peer reviewed studies.  *Id*.  She has never met, or examined, Mr. Bobbitt but has reviewed consultation requests regarding his care.  *Id*. at ¶ 5.

Mr. Bobbitt's medical records demonstrate that, on January 25, 2018, Wexford, the medical care provider before Corizon took over the contract in January of 2019, approved Mr. Bobbitt for bilateral bunionectomy.  ECF No. 30-15 at 5-6.  There is no explanation in the record before the court why the surgeries did not take place, however.  On January 3, 2020, the Wexford authorization was "converted to a Corizon approval."  *Id*. at 6.

Dr. Akintade explains that hallux valgus deformity, commonly known as a bunion, is a deformity of the big toe that causes a bony bump to form on the side of the foot.  ECF No. 30-2 at

¶ 10.  A bunion can result in pain over the joint, stiffness, swelling, difficulty wearing shoes, calluses and corns.  *Id*.  Treatment begins conservatively with activity modification, footwear changes, bunion pads, taping, orthotic devices, pain relievers, and physical therapy.  *Id*.  Surgical removal of the bunion, a bunionectomy, is only medically necessary when conservative treatments have failed, and the pain prevents the patient from performing activities of daily living.  *Id*.

On January 22, 2020, Mr. Bobbitt had a bunionectomy on his right foot with hardware placed.  ECF No. 30-13 at 29.  Mr. Bobbitt was provided follow up care including treatment in the infirmary, suture removal, pain management, application of a CAM boot, a cane to assist with walking, follow up x-rays, home exercises, and diabetic shoes.  ECF No. 30-4 at 5, 11-12, 17; ECF No. 30-13 at 34-35; ECF No. 30-3 at 12-15, 20-21; ECF No. 30-14 at 1; ECF No. 30-15 at 7-9; ECF No. 30-8 at 24, 27; ECF No. 30-7 at 30-32.  Dr. Berger advised Mr. Bobbitt that he would not be scheduled for the left foot bunionectomy until the right foot had fully healed.  ECF No. 30-4 at 5; ECF No. 30-3 at 21.

Dr. Berger evaluated Mr. Bobbitt on October 13, 2022, due to his complaints of right foot plantar pain.  ECF No. 30-7 at 30-32.  Mr. Bobbitt reported increasing pain around the screw placement, when standing for long periods of time. Dr. Berger noted that Mr. Bobbitt had agreed previously to conservative management, which had been attempted, but now requested that the hardware be removed.  *Id*.  Dr. Berger submitted a consultation request for hardware removal (*id*. at 27-29) but on October 21, 2022, UMMD Stacy returned an ATP finding medical necessity was not demonstrated given Mr. Bobbitt's report of discomfort when standing for long periods and suggested conservative management, such as work and activity modification to avoid long periods of standing.  *Id*. at 26.

On December 1, 2022, Dr. Mauro disagreed with the ATP, noting that Mr. Bobbitt would benefit from removal of the hardware with improved functionality and less dependence on pain medication.  ECF No. 30-2 at ¶ 25.  On December 13, 2022, Dr. Akintade discussed Mr. Bobbitt's case with Dr. Berger, overturned the ATP, and approved the surgical removal of the hardware.  *Id*. The surgical removal of the hardware occurred on April 5, 2023 (*id.*; ECF No. 30-14 at 15-16) and Mr. Bobbitt received follow up care.  ECF No. 30-12 at 25-28.

Subsequently, Mr. Bobbitt requested to be seen by podiatry to evaluate his left foot bunion. ECF No. 30-12 at 25-28.  Nurse Practitioner Clark indicated that she would refer Mr. Bobbitt to podiatry and ordered an x-ray of his left great toe for the podiatrist to review.  *Id*.  X-rays taken of Mr. Bobbitt's left toes on June 6, 2023, showed no evidence of osseous fracture and the joints were maintained.  ECF No. 30-14 at 26.  The first metatarsophalangeal joint space showed narrowing/ spurring consistent with osteoarthritis as well as bunion/hallux valgus deformity.  *Id.*

Dr. Berger evaluated Mr. Bobbitt on August 10, 2023, for left foot pain.  ECF No. 30-12 at 2.  He noted that Mr. Bobbitt previously underwent surgery to treat his right foot bunion and then hardware removal which had healed, and he had resumed normal activity.  *Id*.  Mr. Bobbitt reported pain in the left foot and requested bunion repair of the left foot.  *Id*.  He asked that the surgery be performed later that fall because he wanted to be able to see his family.  *Id*.  Dr. Berger indicated that he would follow up when Mr. Bobbitt was ready for the procedure and directed Mr. Bobbitt to continue activity modification and to submit a sick call when he wanted to discuss the surgery.  *Id.*

On November 30, 2023, Dr. Berger evaluated Mr. Bobbitt for recurring left foot pain.  ECF No. 30-15 at 19.  Mr. Bobbitt complained of intermittent left foot pain which was worse at the end of the day after working.  He also requested shoes because his current pair were in poor condition.

*Id.* Examination revealed mild hallux valgus deformity with no evidence of joint crepitus on range of motion. *Id.* at 21. A tracking deformity was noted to the hallux without evidence of joint subluxation. *Id.* Mr. Bobbitt reported pain on palpation of the medial eminence of the left great toe. *Id.* Dr. Berger discussed the risks and complications of the bunionectomy with Mr. Bobbitt who indicated that he wished to proceed. *Id.* Dr. Berger ordered preoperative x-rays of the left foot and submitted a consultation request for the left foot bunionectomy. *Id.*

On December 3, 2023, Nurse Boettinger returned the surgery request to the site for more information, including the results of the x-ray ordered on November 30, 2023, however the x-ray had not yet been completed. ECF No. 30-15 at 15. The x-rays were taken on December 12, 2023. ECF No. 30-14 at 29. No evidence of acute osseous fracture was seen. A mild hallux valgus deformity was noted as well as a moderate bone spur about the Achilles tendon insertion on the calcaneus with no evidence of soft tissue swelling or radiopaque foreign body. *Id.* After the x-ray was completed, Nurse Boettinger forwarded the results to the UMMD for review. ECF No. 30-15 at 15.

On December 19, 2023, Dr. Bartels returned an ATP, indicating medical necessity was not demonstrated for a bunionectomy as Mr. Bobbitt was able to work and accomplish all ADLs. ECF No. 30-15 at 15. Dr. Bartels suggested extra socks, over the counter padding, and another job assignment be considered as next steps. *Id.* Boettinger forwarded the ATP to Dr. Berger (*id.*) who did not appeal. ECF No. 30-17 at ¶ 12.

Dr. Bartels avers that Mr. Bobbitt did not meet the medical necessity for bunionectomy and she did not receive evidence that conservative measures had been exhausted. ECF No. 30-17 at ¶ 12. Further, the record demonstrated that Mr. Bobbitt was able to work and complete basic ADLs, and he reported that most of his discomfort was at the end of the workday. *Id.* Additionally,

Mr. Bobbitt had not placed sick calls slips reporting unbearable pain and his objective examination showed a mild bunion with no complications such as a subluxation. *Id.*

Dr. Akintade agrees with Dr. Bartels' assessment that a bunionectomy was not medically necessary at that time given Mr. Bobbitt was able to work and perform all ADLs. ECF No. 30-2 at ¶ 34. Dr. Akintade avers that she agrees that activity modification and other conservative measures should be tried before surgery and that the procedure was not medically necessary. *Id.*

On May 7, 2024, x-rays of Mr. Bobbitt's left foot were repeated with the results substantially unchanged from previous x-ray. ECF No. 30-15 at 1. Dr. Berger evaluated Mr. Bobbitt on June 18, 2024, and submitted a consultation request for an offsite podiatry consultation evaluation and treatment and left foot bunionectomy, noting that Mr. Bobbitt had chronic pain issues and inflammation despite using specialized shoes. ECF No. 30-9 at 32. Mr. Bobbitt worked in the shops and reported pain at the end of his shift and that the shoes did not help alleviate his symptoms. *Id.* at 26-27. The request was forwarded by RN Dubrawsky to UMMD for review on June 21, 2024. ECF No. 30-15 at 24.

Dr. Bartels explains that Dr. Berger did not include any new information regarding Mr. Bobbitt's need for bunionectomy. ECF No. 30-17 at ¶ 13. Mr. Bobbitt had not been assigned to a different job, but had been prescribed Meloxicam, an NSAID. *Id.* Dr. Bartels returned an ATP again finding medical necessity was not met because, although Mr. Bobbitt complained of discomfort, he was able to work. ECF No. 30-15 at 24. She suggested considering reassigning Mr. Bobbitt to other types of work. *Id.* On July 17, 2024, Nurse Boettinger noted the ATP was upheld after discussion with Drs. Ikusika and Berger. *Id.*

In a second declaration, Nurse Boettinger explains the notations in the record regarding the June 21, 2024 ATP. ECF No. 38-1. Nurse Boettinger explains that RN Dubrawsky sent the ATP

on June 21, 2024, to the site. *Id*. at ¶ 2. On July 10, 2024, Nurse Boettinger emailed Dr. Berger about the ATP because he had not addressed/documented whether he had accepted the ATP or wished to appeal it. *Id*. Nurse Boettinger explains that providers who submit consultation requests for UM review must either accept the ATP or request to discuss/appeal the matter with the UMMD. *Id*. On July 17, 2024, Nurse Boettinger noted the ATP was upheld per discussions with Drs. Ikusika and Berger. *Id*. Nurse Boettinger explains that while she was present for the discussions between Drs. Berger and Ikusika, she was not involved in the conversation or decision making, she was present only to provide any documentation requested and to document the decision reached by the physicians. *Id*. Dr. Berger accepted the ATP and did not appeal it. *Id*.

    2. Mr. Bobbitt's Opposition

    In his opposition, Mr. Bobbitt reiterates that he was approved for bilateral bunionectomy in 2006. ECF No. 35-1 at 8. He provides the September 14, 2006, request for bilateral bunionectomy wherein the physician noted that Mr. Bobbitt had been seen in the podiatry clinic for over a year and complained of painful bunions in both feet, with the left more symptomatic, and had complaints of pain standing and walking. ECF No. 35-3 at 2. He had been provided NSAIDS and attempted shoe modification. *Id*. An x-ray showed a well-developed bunion. *Id*.

    Mr. Bobbitt reiterates that his left foot bunion causes him pain in his left foot and back and that he has been seen by multiple medical providers who have recommended bilateral bunionectomy to relieve the pain. ECF No. 35 at 6-7. He explains that he has tried wide shoes, bunion custom mold fittings, and medication for pain relief. None of which worked. *Id*. He states that the unresolved symptoms interfere with his ADLs and limit his ability to perform his job effectively. *Id*. at 7. He states that his foot hurts when he walks and throbs at night when lying down. *Id*. In response to Dr. Bartels' assertions, Mr. Bobbitt states that neither Dr. Berger nor

any other medical provider asked him to change his job assignments to receive left foot bunion surgery. *Id.* Additionally, Mr. Bobbitt states that he does not believe a medical contractor has the authority to change his job assignment, "especially in an attempt to use [his] job assignment as leverage to receive adequate medical treatment." ECF No. 35-6 at 5. Further, Mr. Bobbitt states that he was not able to walk with extra socks as recommended by UMMD staff because his shoe was too tight, and the bunion poked from the shoe. *Id.* He explains that his foot hurts not just from working but when walking or when it hits on something. *Id.*

In further support of his claim, Mr. Bobbitt explains that after the filing of Defendants' motions, on October 2, 2024, Dr. Masoud Djahanmir submitted two consultation requests, including a request to have an offsite orthopedic doctor examine his left foot, but the request was denied by Dr. Akintade. ECF No. 35-1 at 8; ECF No. 35-4 at 3.

D. Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

When the moving party styles its motion as a motion to dismiss or, in the alternative, motion for summary judgment, as is the case here, and attaches additional materials to the motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the court,

and the court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

E. Need for Discovery

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of*

*Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).  A party opposing the conversion of a motion

to dismiss into one for summary judgment must, ordinarily, submit a Rule 56(d) affidavit setting

forth the reasons for opposition.  *Evans v. Tech Applications & Serv. Co.*, 80 F.3d 954, 961 (4th

Cir. 1996).  Even without a Rule 56(d) affidavit, the court may consider whether the nonmoving

party has "adequately informed the [] court that the motion [for summary judgment] is [premature]

and more discovery is necessary."  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214,

244 (4th Cir. 2002).  The Fourth Circuit has emphasized that discovery is "broadly favored" in

advance of reaching summary judgment and district courts are to afford pro se plaintiffs leniency

in regard to the requirements of Rule 56(d).  *Farabee v. Gardella*, 131 F.4th 185, 193-95 (4th Cir.

2025).  Nevertheless, a plaintiff "cannot simply demand discovery for the sake of discovery."

*Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 3d 331, 342 (D. Md. 2011).

    In his opposition responses, Mr. Bobbitt seeks discovery and provides affidavits pursuant

to Fed. R. Civ. P. 56(d)[2] in support of his requests.  ECF No. 35-10 at 3; ECF No. 36-11.  He asks

to depose Dr. Berger, the doctor who has provided foot and ankle care to him since July 2019, and

who has continually treated him and repeatedly recommended the procedure.  ECF No. 35-6 at 6;

ECF No. 36-6 at 6.  He also seeks to depose Dr. Bruce McClendon, the podiatrist who submitted

a consultation request in 2018 and has provided podiatry care to him since May of 2015.  Dr.

McClendon would be able to state when the bunionectomy surgery was first approved.  He believes

the deposition of Dr. Masoud Djahanmir, who submitted a consultation request for podiatry and

MRI which was "ATPed" by Dr. Akintade in November of 2024, would also provide information

to assist him in opposing the dispositive motions.  *Id*.  Dr. Djahanmir has been Mr. Bobbitt's

---

[2]    On April 7, 2025, the court received Mr. Bobbitt's "Amendment by Interlineations
Correcting unsworn Declaration" wherein he provides a declaration, under the penalties of perjury,
to accompany his responses in opposition.  ECF No. 42.

chronic care physician for the last two years and has knowledge about his condition. *Id*. Mr. Bobbitt explains that the various medical providers he seeks to depose have submitted surgical consultation requests because they recognize his serious medical needs as well as the pain associated with his condition. ECF No. 35-6 at 6.

Additionally, Mr. Bobbitt seeks discovery to identify the UMMD staff who are only identified by UM review numbers listed in his medical records and to obtain Dr. Berger's documentation of failed outpatient therapies tried as conservative management of his condition. *Id*. at 7; ECF No. 36-6 at 7.

Mr. Bobbitt seeks to depose Adaora Odunze RN and Cynthia Shriver CRNP ACOM and to review documents, letters, and emails generated when they investigated his ARPs. ECF No. 35-6 at 8. He also seeks to depose Mr. Jenkins regarding the Correctional Defendants' awareness of his medical situation relative to his writing to Dr. Baucom and to explore the hierarchy and countermand authority and duties of correctional staff. *Id*. at 8-9; ECF No. 36-6 at 8; ECF No. 36-1 at 8.

Additionally, Mr. Bobbitt seeks to discover his full medical records; the content of discussions between medical providers; detailed information on staff hierarchy; UM/UMMD information gathering; email communication documentation between onsite and offsite medical providers; ATP standard customs, policies, and practices; PRISM investigative notes and email communication; Dr. Berger's authority to change his job; whether Dr. Berger filed an appeal of either ATP (ECF No. 35-11 at 5-6); DPSCS's Chief Medical Officer's contact with Dr. Berger; the 2023 and 2024 DPSCS audit of independent contractors and medical treatment; whether the ATP was feasible; new and recent ARP complaints; and his December 2024 ARP. ECF No. 35-11 at 6; ECF No. 36-11 at 5-7.

He asserts that he needs discovery because the declarations filed in support of the Correctional Defendants' motion do not address that an independent audit showed issues processing ARPs and investigating medical complaints. ECF No. 35-1 at 13. He seeks video footage from a February 2025 WCI inmate representative counsel town hall with WCI administration regarding planned intervention into medical department complaints during which he asserts staff admitted to the authority to countermand and monitor the performance of independent medical contracts which contradicts Warden Weber and Assistant Warden Butler's declarations. ECF No. 36-11 at 7.

The Medical Defendants argue that Mr. Bobbitt is not entitled to the discovery requested. Specifically, as to Mr. Bobbitt's contention that "questions exist regarding the hierarchy, including who holds responsibility for making decisions regarding the approval or denial of medical treatment" (ECF No. 35-1 at 16-17), the Medical Defendants contend that Mr. Bobbitt is mistaken, because the evidence reveals who made the medical decisions in this case through declarations and medical records. They postulate that Mr. Bobbitt is confused by the fact that Dr. Bartels' name does not appear in his onsite medical records and explain that it is so because she does not work onsite and was not his onsite provider. *See* ECF No. 35-1 at 17.

The Medical Defendants dispute Mr. Bobbitt's need to conduct depositions to ascertain the content of the discussion between Dr. Berger and YesCare employees where an ATP was upheld. ECF No. 35-1 at 17. The Medical Defendants contend that discussion is not relevant to Mr. Bobbitt's claims against Medical Defendants because: (1) Dr. Akintade was not involved in the June 18, 2024 consultation request or issuing the ATP; and (2) Nurse Boettinger does not make recommendations for appropriateness of care or evaluate treatment plans, cannot issue ATPs or make medical decisions, and did not issue the ATP at issue; and (3) Dr. Bartels had issued the ATP

on June 21, 2024, based on her medical judgment.  In the Medical Defendants' view, because neither Dr. Ikusika nor Dr. Berger is a  defendant, their conversation is irrelevant to the case.  *Id.*

In his oppositions to Defendants' Motions, Mr. Bobbitt has attached verified Declarations under Rule 56(d) asserting that discovery is necessary to allow him to "properly justify" his opposition to the respective Motion.  ECF No. 35-10, ECF No. 35-11; ECF No. 36-11, ECF No. 36-10.  Mr. Bobbitt states that because he is proceeding pro se he has not had an opportunity to consult with a medical expert or to evaluate properly the credibility or completeness of the defendants' statement of facts.  ECF No. 35-11 at 3,  ¶¶ 7, 8; ECF No. 36-11 at 3, ¶¶ 7, 8.

In particular, Mr. Bobbitt asserts that in order to establish deliberate indifference, he needs discovery to explore the mindset and knowledge of the defendants and the extent of defendants' knowledge of his serious medical need.  ECF No. 35-11 at 3, ¶ 11; ECF No. 36-11 at 3, ¶ 11.  Mr. Bobbitt also seeks to depose several of the named Defendants and other witnesses, including prison staff and medical providers, regarding their involvement in the denial of the requested surgical procedure and the procedures and processes regarding the denial.  ECF No. 35-11 at 3-4, ¶¶ 11, 12, ECF No. 36-11 at 3-4, ¶¶ 11, 12.  According to Mr. Bobbitt, there is a genuine dispute of material fact regarding defendants' deliberate indifference to his serious medical needs and discovery, including expert evidence, is needed to allow him to further develop his claims.  ECF No. 35-11 at 4, ¶ 15, ECF No. 36-11 at 4, ¶ 15.

The court disagrees with the Medical Defendants' assertions that discovery is not necessary to resolve the claims against them.  Mr. Bobbitt alleges that he has been denied multiple requests for surgical resolution of his left foot bunion.  The Medical Defendants state in their declarations that they either are responsible for reviewing consultation requests or for gathering information to submit to the UMMD.

The Medical Defendants had a role in the consultation and ATP approval process. It is not clear what, if any, additional actions any of the Medical Defendants should have taken in reviewing the multiple requests for left foot bunionectomy. Further, while the court has been furnished with some information concerning the process for approving medical care, it has not been provided specific information concerning Mr. Bobbitt's case such as how and why the ATP for the removal of screws in Mr. Bobbitt's right foot was overridden, but the ATPs for left foot bunionectomy were not, despite Mr. Bobbitt having been previously approved for, and thereafter repeatedly recommended for that procedure by a number of different doctors, including specialists. It is also not clear what, if any, responsibility the Medical Defendants had to gather additional information regarding Mr. Bobbitt's treatment before determining that a conservative plan of treatment had not been fully tried and the ATP recommended. While the Medical Defendants contend that the issue presented is a mere disagreement with the medical care provided, the court disagrees given the prior approval of surgical excision of the left foot bunion by two different medical contractors, followed by repeated requests by both a specialist and Mr. Bobbitt's chronic pain doctor, that the surgery be scheduled. Therefore, it is not possible for the court to determine the role of each Medical Defendant and their subjective knowledge in regard to the denial of Mr. Bobbitt's treatment. Mr. Bobbitt is entitled to an opportunity to explore these topics through discovery.

Finally, Mr. Bobbitt has named YesCare Scheduler as a defendant. To the extent that other individuals, including medical providers and/or other correctional staff, may be responsible for the denial of treatment and/or the adequacy of treatment for Mr. Bobbitt, discovery will allow Mr. Bobbitt to determine the identity of these individuals and to request to file a second amended complaint, if warranted. Mr. Bobbitt has reasonably articulated the reasons he needs discovery

and how the requested discovery will assist him in disputing the Medical Defendants' contentions. In light of the foregoing, the Medical Defendants' dispositive motion shall be denied without prejudice. The portion of the court's Order denying Mr. Bobbitt's request for appointment of counsel (ECF No. 46) is vacated and the request for appointment granted.[3]

CONCLUSION

The Correctional Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is granted.[4] The Complaint shall be dismissed without prejudice as to the Correctional Defendants for failure to exhaust administrative remedies. The Medical Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment is denied without prejudice to allow discovery to take place. The portion of the court's Order denying Mr. Bobbitt's request for appointment of counsel is vacated and the request for appointment granted. Mr. Bobbitt's Motion to Stay is denied without prejudice. A separate Order follows.


August 26, 2025                             _____/s/_____
                                           DEBORAH K. CHASANOW
                                           United States District Judge


---

[3]    The court is in receipt of Mr. Bobbitt's Motion to Stay proceedings for 90 days. ECF No. 47. Mr. Bobbitt explains that he recently has been approved for left foot bunionectomy which is to be scheduled in the next two months. He expresses concern that he would not be able to litigate this matter while recovering from surgery. Given that counsel is being appointed to represent him, the motion shall be denied without prejudice.

[4]    While the Correctional Defendants have moved for summary judgment, and the court has considered evidence attached to the motion in reaching the conclusion herein, the Fourth Circuit has advised that dismissal for failure to exhaust should be without prejudice. *See Moss v. Harwood*, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (collecting cases); *Germain v. Shearin*, 653 F. App'x 231, 234–35 (4th Cir. 2016) (finding dismissal "mandatory" for failure to exhaust and affirming district court's grant of summary judgment but modifying order to be dismissal without prejudice).